COMMONWEALTH vs. JOSEPH R. LUTZ, JR.

Suffolk.    February 14, 1980. — March 7, 1980.

Present: GREANEY, PERRETTA, & NOLAN, JJ.

*Practice, Criminal,* Directed verdict, Argument by prosecutor, Instructions to jury. *Identification. Robbery.*

At the trial of a defendant charged with armed robbery while masked, evidence that two of the victims, who had met or were acquainted with the defendant, recognized the defendant's voice during the robbery, as well as certain physical features of the defendant, taken together with other evidence, was sufficient to identify the defendant as one of the robbers. [358-360]

There was no merit to a defendant's contention that the prosecutor at a criminal trial improperly suggested in his summation that the defendant could be convicted solely on certain evidence. [360-361]

In the context of the judge's entire charge to the jury in a criminal case, the judge's poorly advised comment in the course of his explanation of the presumption of innocence that "the score, as far as this defendant is concerned, when this case starts, is nothing to nothing" did not shift the burden of proof to the defendant. [361-362]

At an armed robbery trial, the judge was not obliged sua sponte to remind the jury that the mere fact that the defendant later had possession of the stolen items was not sufficient to convict him. [362-363]

At a criminal trial, the judge's instructions as to possible mistaken identification by the victims were adequate. [363]

INDICTMENTS found and returned in the Superior Court on March 15, 1978.

The cases were tried before *Linscott, J.*

*Thomas F. Reilly* for the defendant.

*Leonard J. Henson,* Assistant District Attorney, for the Commonwealth.

GREANEY, J.   The defendant has appealed from his convictions by a jury on crimes of armed robbery while masked,

assault by means of a dangerous weapon, and armed assault in a dwelling.[1] We affirm the convictions. References to the pertinent testimony and events at the trial will be developed in the discussion of the three claims of error argued.[2]

1. *Directed verdicts.* The defendant's motion for directed verdicts of acquittal raised the sole question whether the Commonwealth's evidence was sufficient to identify him as one of the two armed and masked robbers responsible for the commission of the crimes.

The offense occurred on February 1, 1978, at approximately 2:30 P.M. when two masked men, one armed with a .45 caliber revolver, and the other with a knife, entered an apartment in Brighton occupied by Eric Best and Bart Axelrod. The intruders bound and tied Best, Axelrod, and their female guest with rope, covered the victims' heads with pillow cases, rummaged through the apartment looking for marihuana and money, and, after finding neither, stole three electric guitars. The victim Best testified that he had worked and socialized with one of the robbers, David Tyler, and had also given Tyler guitar lessons. Through Tyler, Best had met the defendant Lutz, and had visited Lutz's apartment on several occasions. One visit by Best with the defendant extended for forty-five minutes to one hour. There was testimony that the defendant had visited the victims' apartment earlier on the day of the robbery. Best testified that he recognized Lutz as one of the robbers "[i]mmediately . . . [t]he second he opened his mouth . . . [b]ecause I had heard his voice before . . . I had seen him that morning and seen him a couple of times. I know what his voice sounds like." Best also testified that, in addition to his familiarity with the defendant's voice, he recognized the defendant from the fact that Lutz is marked by a distinctive anatomical feature (protruding buttocks).

---

[1] One indictment charging the defendant with two counts of receiving stolen goods was not submitted to the jury and was placed on file without a change of plea with the defendant's consent.

[2] A fourth claim was briefed but expressly waived at oral argument by the defendant's appellate counsel.

The victim Axelrod testified that he had been in Tyler's presence on approximately ten prior occasions and that he believed that Tyler was one of the assailants "[b]ecause of his mannerisms, and also his voice, which [he] was apparently trying to disguise, but which . . . [did not] sway my opinion." He testified that he had met the defendant earlier that same day when Lutz had come to the apartment looking for Tyler and that the second robber "[d]efinitely" appeared to be of the same type, height and weight as the man introduced to him as Joseph Lutz about an hour and a half before. A neighbor, Peter Policastro, testified that he lived in an apartment next to that of the victims, that on the day of the robbery he was looking out his front window when he observed two men, one of whom he identified as the defendant, leave the building carrying three guitars, walk to a yellow Ford Maverick automobile which was missing a bumper, and drive off. He testified that he assumed that the two males had been in the victims' apartment, that he made his observations over a five to fifteen second period from a distance of thirty to sixty feet, and that he had seen a third male, the driver of the car, walking on the street a short while before the other two males exited the building. A Boston police detective testified that he and another officer apprehended Tyler and Lutz in Cambridge about one hour and forty-five minutes after the robbery as they approached a yellow Ford Maverick (with its bumper missing) carrying three guitars. Subsequent to his arrest, Lutz told the police that at the time the officers made the arrest in Cambridge "he had called a fence up, and [he and Tyler] were on their way to this fence to fence the guitars."

All of this evidence, considered in its light most favorable to the Commonwealth, together with reasonable inferences that could be drawn therefrom (*Commonwealth* v. *Sandler*, 368 Mass. 729, 740 [1975]; *Commonwealth* v. *Sampson*, 7 Mass. App. Ct. 514, 517 [1979]), was sufficient to permit a rational jury to conclude beyond a reasonable doubt that the defendant was one of the robbers. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979); *Commonwealth* v.

*Campbell,* 378 Mass. 680, 686 (1979). The defendant's argument that there was no firm evidence placing him in the apartment is not convincing. The defendant's identification by the male victims, particularly the reasonably definitive identification by Best, together with Policastro's eyewitness observations, the apprehension in Cambridge of Tyler and Lutz shortly after the robbery, and the defendant's post-arrest statements, were enough to warrant the jury's conclusion that Tyler and the defendant were the masked and armed men who had committed the robbery and that they had been working jointly with a third confederate who acted as the look-out and driver of the getaway car. We also do not agree with the defendant that the male victims' identification of the robbers in part by voice recognition raises the voice identification issues discussed in *Commonwealth* v. *Marini,* 375 Mass. 510 (1978). That decision was concerned with an impermissibly suggestive in-court voice identification experiment arranged by the prosecution at the trial. *Id.* at 515, 516-519. This is not our case. If there were any problem with Best's basing his identification in part on his recognition of the defendant's voice, and Axelrod's basing his on a recognition of Tyler's voice and the defendant's general physical features, the problem would go to the establishment of a foundation for the admission of this particular evidence. We are satisfied that there was sufficient preliminary authentication by way of showing familiarity by the victims with the voices of Tyler and Lutz to make their testimony of recognition admissible. *Commonwealth* v. *Murphy,* 356 Mass. 604, 610-611 (1970). As a consequence, there was no error in denying the defendant's motion for directed verdicts of acquittal.

2. *Prosecutor's closing argument.* The defendant argues that, in his summation, the prosecutor assumed that none of the victims could identify the defendant and then improperly suggested to the jury that the defendant could be convicted solely on the testimony of Policastro and the police detective. Even if we accept the defendant's premise that a

conviction would not have been warranted on the testimony
of the neighbor and the police officer linking Lutz to the
crimes, we cannot, after examining the assistant district at-
torney's summation, find in it any of the nuances suggested
by the defendant. The prosecutor fully developed the iden-
tification testimony of Best and Axelrod — as he had every
right to do (the female guest made no identification). He
then argued, in substance, that the testimony of the neigh-
bor and the police officer provided corroborating independ-
ent evidence implicating the defendant with the commission
of the crimes. At no point in the closing did the prosecutor
tell the jury that they could assume the identifications by
the male victims might be faulty. The summation was fair,
nonprejudicial argument that stayed within the parameters
of the evidence and reasonable inferences which could be
drawn therefrom. *Commonwealth* v. *Hoffer*, 375 Mass.
369, 378 (1978), and cases cited. The defendant's trial
counsel undoubtedly recognized this fact when he made no
objection to the prosecutor's closing.

3. *Jury instructions.* The judge, at the beginning of his
charge, after explaining the function of the grand jury and
the role of the indictments, told the jury in the course of his
explanation of the presumption of innocence that "the
score, as far as this defendant is concerned, when this case
starts, is nothing to nothing." The defendant argues that
this comment eroded the presumption of innocence and im-
permissibly shifted the burden of proof to him.

To the extent that the metaphor was designed to illustrate
a fundamental principle of adjectival criminal law, it was
not apt. In context, however, the remark was apparently
calculated to impress upon the jury that both parties in a
criminal case stand before the court with equal dignity and
that neither should be arbitrarily favored by way of preju-
dice against the Commonwealth or against defendants as a
class. See *United States* v. *Dark*, 597 F.2d 1097, 1099 (6th
Cir. 1979) (comment "[n]either side has the edge" probably
designed to stress jury neutrality; confusion, if any, cured
by proper instructions on presumption of innocence and

reasonable doubt). Any prejudice or confusion which might have emanated from the poorly advised comment was immediately erased by the judge's instructions that no inferences could be drawn against the defendant by reason of the indictments, that the Commonwealth had the burden of establishing the defendant's guilt beyond a reasonable doubt, that the defendant did not have to shoulder any burden of proof, and that "unless the jury is satisfied of guilt on each of these [indictments] beyond a reasonable doubt, the defendant should have the benefit of that doubt, and [be] found not guilty." The jury were subsequently given a definition of the concept of reasonable doubt that stated the essentials of the time-tested language of *Commonwealth v. Webster*, 5 Cush. 295, 320 (1850). The balance of the charge clearly and correctly instructed the jury on the gravity of their duty, the substantive elements of the crimes charged, and all the other aspects of the case essential to a fair and deliberative verdict. *Commonwealth v. Porter*, 10 Met. 263, 283 (1846). *Commonwealth v. Kelley*, 359 Mass. 77, 92 (1971). Contrast *Commonwealth v. Corcione*, 364 Mass. 611, 618 (1974). Keeping in mind that the presumption of innocence is an abbreviated description of the right of the accused to "remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion" (9 Wigmore, Evidence § 2511 [3d ed. 1940]), we are convinced, after examining the charge in its entirety (*Commonwealth v. Therrien*, 371 Mass. 203, 206 [1976]), that the jury were not misled, that basic components of due process were not trivialized, and that the burden of proof was not shifted to the defendant.

We also cannot accept the defendant's argument that the judge was obliged sua sponte to "remind the jury that the mere fact that the defendant later had possession of the stolen guitars was not sufficient to convict him." In the absence of a request for an instruction on the point, the judge was not obliged to explain to the jury the defendant's hypothesis any more fully than he did. The jury, by reason of defense counsel's cross-examination, the final arguments,

and the charge, were adequately made aware of the fact that the defendant might have been misidentified as one of the robbers, and might be culpable only of sharing the fruits of the crime by receiving stolen goods.

Finally, we are satisfied that the judge's instructions as to possible mistaken identification by the victims were adequate. In a trial that occurred before the decision in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 301-302 (1979), the judge was attentive to the question of mistaken identification, and he did not improperly submerge that crucial issue by casting it in terms of a veracity contest. See *Id.* at 301-302 (1979); *S.C.*, 6 Mass. App. Ct. 738, 742-744 (1978). He informed the jury that "the big question . . . is [whether] you are satisfied beyond a reasonable doubt that the right man is here?" He also told the jury in evaluating the issue to "size" the witnesses up, to consider the impressions made by the witnesses, to gauge their testimony in the light of the cross-examination, and to examine the opportunities the witnesses had to identify the robbers. He expressly linked the jury's identification analysis to all the principles of law that he had already explained, which included complete instructions on the burden of proof and on the meaning of reasonable doubt. The instructions dealing with this aspect of the case covered, in different language, most high points of the model charge contained in the appendix to the *Rodriguez* decision. 378 Mass. at 310-311. In the absence of a request at the trial by defense counsel for more abundant judicial discourse on the subject, the instructions were adequate. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 482-484 (1980).

*Judgments affirmed.*