COMMONWEALTH *vs.* CHARLES BILLUPS, JR. March 4, 1982. The defendant appeals convictions of assault with intent to commit rape, assault and battery with a dangerous weapon, attempted murder, assault with intent to murder, and armed burglary. There was evidence that he broke into an apartment through the back door when the head of the household, a woman by the name of Vivenzio with whom the defendant had previously had an affair, was away; that Vivenzio's child had been left in the care of a fifteen year old girl (the victim); that when Vivenzio returned to the apartment, she found the victim huddled on a bedroom floor covered with blood; that the defendant, pants partially down and covered with blood, lay flat on the floor behind the victim, seemingly trying to hide under a bed; and that the victim accused the defendant of having attacked her sexually and with a hammer. The defendant denied being the attacker, claiming that he had seen an unknown Puerto Rican male leaving the building when he (the defendant) arrived and that the back door had been ajar. He explained the blood on his clothing as being the result of his attempts to help the victim. Observers said that the defendant appeared to

be high, and he was carrying hashish. The appeal is based on several evidentiary points.

1. When the police arrived on the scene, they listened to the victim's accusations that the defendant had attacked her (and probably also, through Vivenzio, the defendant's suggestion that an unknown Puerto Rican intruder had been the attacker). They asked the defendant to step into another room and ordered him to drop his pants so they "could observe his shorts and lower regions." His underpants and skin were heavily blood-stained, and he was then placed formally under arrest and was later read his Miranda rights on the way to the police station. The police had probable cause to arrest the defendant based on the victim's accusations. It is unnecessary to determine whether the defendant was, in effect, under arrest at the time he was directed to expose his underpants and genital area. In either event the observations by the police were admissible, as was the clothing itself, for the reasons stated in the similar case of *Cupp* v. *Murphy,* 412 U.S. 291 (1973). The evidence was within "the area 'into which [the defendant] might reach,'" *id.* at 295, quoting from *Chimel* v. *California,* 395 U.S. 752, 763 (1969), and was subject to alteration by him. Although Miranda warnings had not yet been given, the exposure was nontestimonial in nature. See *Schmerber* v. *California,* 384 U.S. 757, 763-765 (1966), and *Warden* v. *Hayden,* 387 U.S. 294, 302-303 (1967). It is unnecessary to consider whether the judge should have excluded from evidence the defendant's initial negative response to the request that he expose his inner clothing and body. The refusal was inconsequential in relation to the evidence produced by the search coupled with the generally overwhelming nature of the evidence against the defendant and his fanciful and frequently contradictory explanations of events. If the admission of the refusal was error, it was clearly harmless in its impact on the jury.

2. During its case in chief the Commonwealth was precluded from introducing evidence illustrating the defendant's bizarre behavior at the police station: namely, his expressed fear that if the police removed the blood-stained wristbands from his wrists he would "lose his power," and his reluctance to have his mugshot taken, lest his spirit enter the camera. Thereafter the defendant took the witness stand and gave a version of events the night of the incident in which he played the role of friend and protector of the family in the aftermath of the visit by the unknown Spanish-speaking intruder. According to the defendant the victim did not know who her attacker was, and when he (the defendant) tried to help her, she leaped to the incorrect conclusion that it was he who had beaten her. His version characterized his own actions as cool, collected, and rather heroic (especially in his preparations to defend the child against further attack by any intruder who might still be on the premises). He emphatically denied having been high or drunk. The judge did not err in permitting the Commonwealth to use the stationhouse statements in cross-

examination. He could reasonably have viewed those statements as having relevance in corroborating the testimony of several witnesses that the defendant was not in full possession of his wits the night in question. Relevance is often a judgment call, *Commonwealth* v. *Pettijohn*, 373 Mass. 26, 30 (1977), and this call could have gone either way. Certainly the earlier exclusion of the same testimony did not give the defendant a right to its exclusion at a later stage of the trial. See *Salter* v. *Scott*, 363 Mass. 396, 401-402 (1973), quoting *Peterson* v. *Hopson*, 306 Mass. 597, 601 (1940).

3. The defendant appears not to challenge the use of a portion of the tape recording of his uncounselled arraignment to contradict his assertion in direct examination that he was sober at the time of the crimes alleged. See *Harris* v. *New York*, 401 U.S. 222 (1971); *Commonwealth* v. *Harris*, 364 Mass. 236 (1973). He objects instead to the use of an immediately preceding portion of his taped statement in which he told the arraignment judge that he had been "robbed that night while I was asleep in the chair. I was missing $82." It lay within the judge's discretion whether to require excision of the objected-to portion, the two portions arguably constituting a single thought (i.e., that the defendant was drunk and was robbed while he lay asleep). Contrast *Commonwealth* v. *Pleasant*, 366 Mass. 100, 103 (1974). In any event, it is clear that no harm could have been done. The defendant had been thoroughly questioned on cross-examination concerning his assertions after his arrest that he had been robbed and admitted those assertions. The portion of the taped statement objected to merely corroborated his admission and did not go further. Contrast *Commonwealth* v. *Dutney*, 4 Mass. App. Ct. 363, 371-373 (1976), and *Commonwealth* v. *Pimental*, 5 Mass. App. Ct. 463, 465-468 (1977), in each of which an inconsistency with respect to a collateral matter was improperly made the basis for the introduction of much highly prejudicial material going far beyond the limited area of inconsistency.

4. Without doubting that, as a general rule, a defendant in a criminal case should be allowed to explain the meaning of or the reason for pretrial statements used to impeach his testimony at trial, *Commonwealth* v. *Kerrigan*, 345 Mass. 508, 513 (1963), we think that the defendant was not prejudiced by the judge's refusal to let him explain what he had meant by the statement, "When that went down, I was pretty drunk." The offer of proof as to what the explanation would have been ("I don't know what went down in regard to how [the victim] got attacked") contained nothing of value to the defense. Apart from that, the questions as framed by the defendant's counsel were improper because they materially misstated the language to be explained.

*Judgments affirmed.*

*John P. Courtney* for the defendant.
*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.