COMMONWEALTH *vs.* NICHOLAS BRIEN. December 3, 1984. *Practice, Criminal,* Grand jury proceeding. *Grand Jury.*

The principles that emerge from *Commonwealth* v. *Gibson,* 368 Mass. 518, 522-525 (1975), *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 654-657 (1979), *Commonwealth* v. *McCarthy,* 385 Mass. 160, 162-164 (1982), *Commonwealth* v. *Salman,* 387 Mass. 160, 166-168 (1982), *Commonwealth* v. *O'Dell,* 392 Mass. 445, 446-452 (1984), *Commonwealth* v. *Connor,* 392 Mass. 838, 853-854 (1984), and *Commonwealth* v. *Saya,* 14 Mass. App. Ct. 509, 511-516 (1982), are that the proceedings before a grand jury are not required to be confined to evidence which would meet the technical standards for admissibility at a trial, so long as the evidence is probative of the defendant's criminal activity; but that where the Commonwealth has failed to produce any evidence of the defendant's criminal activity (*Commonwealth* v. *McCarthy, supra*), or where the Commonwealth has impaired the integrity of the grand jury proceedings by knowingly using false testimony (*Commonwealth* v. *Salman, supra*), or by doctoring the evidence so as to give the grand jury a distorted picture of its probative force (*Commonwealth* v. *O'Dell, supra*), a motion to dismiss the resulting indictment will lie. As an institution "in which laymen conduct their inquiries unfettered by technical rules," *Commonwealth* v. *Gibson,* at 524, it is inevitable that a grand jury will frequently be exposed to information that would be excluded at trial. Such exposure, standing alone, does not impair the integrity of their proceedings. *Commonwealth* v. *Saya, supra* at 514-515. Where the Commonwealth, however, is shown to have concertedly guided the grand jury's attention into improper, nonprobative, inflammatory areas, "deceiv[ing] grand jurors as to 'the shoddy merchandise they [were] getting'" (*Commonwealth* v. *St. Pierre, supra* at 655, quoting from *United States* v. *Estepa,* 471 F.2d 1132, 1137 [2d Cir. 1972], and *United States* v. *Payton,* 363 F.2d 996, 1000 [2d Cir.], cert. denied, 385 U.S. 993 [1966] [Friendly, J., dissenting]), courts will necessarily view the presentments of the grand jury with a jaundiced eye.

The alleged transgressions in this case do not make a close approach to impairing the integrity of the grand jury proceedings. Following the testimony of the investigating officer who outlined the Commonwealth's evidence to the grand jurors, including the identifications by the two pharmacists from whom the defendant had stolen drugs at gunpoint, the grand jury invited the officer back into the room and put questions to him as to the certainty of the identifications and as to how the officer had come to have the defendant's picture to insert into the photographic array. The officer stated that he had received a tip as a result of which he drove to another town and obtained the photo of the defendant from its police department. One of the grand jurors asked what drug the defendant had stolen. The officer replied that it was Percodan and added that Percodan was used by some heroin addicts to compensate when heroin was unavailable. A juror then asked whether the defendant was a drug addict, and the officer said, "Yes, I believe he is." A juror then asked about the gun, whether it had been found (the answer was negative) and whether the defendant had a permit to carry a firearm. To this the officer replied, "No. I don't believe he has one or will ever have one."

We do not regard the answer about Percodan as unresponsive to the grand juror's inquiry. The officer may well have thought that the juror was searching not just for a technical name but for an explanation of what the stolen drug is used for. The answer about the defendant's drug addiction had obvious relevance, both to the defendant's possible motivation and to manner in which he may have fallen into the investigatory dragnet. The third answer, relative to the carrying permit, may have gone slightly beyond the response called for by the question but can hardly be thought to have impaired the integrity of the proceedings. Most likely the officer was simply articulating the basis of his stated "belief" that the defendant had not been issued a permit to carry: that such licenses will not be knowingly issued to addicts. We know of no good reason why a grand jury should be precluded from inquiring into, and receiving honest answers concerning, police practices, in evaluating the strength of the Commonwealth's case against a suspect. This case falls within "the general rule that a court should not inquire into the adequacy or competency of the evidence upon which an indictment is based." *Commonwealth* v. *Salman, supra* at 166.

The other point argued involves the judge's resolution of a run-of-the-mill conflict in testimony and has no merit.

*Judgment affirmed.*

*Patricia A. O'Neill* for the defendant.
*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.