Commonwealth vs. James M. Seminara
(and a companion case[1]).

Berkshire. June 3, 1985. — September 23, 1985.

Present: Brown, Kass, & Warner, JJ.

*Practice, Criminal,* Grand jury proceedings, Instructions to jury. *Evidence,*
Identification, Hearsay, Photograph. *Identification. Error,* Harmless.
*Search and Seizure,* Arrest, Inventory. *Armed Robbery.*

The integrity of a grand jury was not impaired by an assistant district attor-
ney's statement that the defendants against whom indictments were being
sought "had elected to admit that there was probable cause at that point
in time at the District Court," where it was apparent that the statement,
taken in context, referred merely to the defendants' procedural decision
to waive a probable cause hearing in the District Court and where the
statement was made after the grand jury had already heard enough
evidence to support the indictment. [792-794]

There was no merit to contentions by the defendants in a criminal case that
the integrity of grand jury proceedings against them had been impaired
as a result of an assistant district attorney's testimony before the grand
jury that counsel for one of the defendants had opposed a lineup, and
as a result of certain minor inaccuracies in the evidence presented to the
grand jury. [794-795]

At the trial of indictments charging two defendants with armed robbery,
there was reversible error with respect to both defendants in the admission
of testimony from a police detective that a witness had tentatively iden-
tified a photograph of one of the defendants and in the admission of the
photograph, where at trial the witness, who was unable to make an
identification in court, was not asked whether the photograph admitted
in evidence was the one she had earlier selected, where the prosecutor
in his closing argument emphasized the witness's selection of the photo-
graph, and where the circumstantial evidence against the defendants,
although strong, was not overwhelming. [795-799]

There was no merit to a criminal defendant's contention that he was entitled,
as a matter of constitutional right, to make his closing argument after
that of the prosecutor. [799]

[1] Commonwealth vs. Glenn C. Haynes, Jr.

Evidence in a criminal case, including evidence that a police officer in a cruiser received a radio transmission informing him of a robbery and alerting him to look for an automobile of a particular description, that shortly thereafter the officer saw such an automobile, and that the automobile sped away from the marked cruiser and failed to stop when the officer turned on flashing lights and a siren, warranted the judge's conclusions that, after the automobile crashed while being pursued by the police cruiser, the officer had probable cause to arrest the driver of the automobile and a passenger and to search the passenger compartment incident to the arrest, and that a search of the automobile on the following day was a lawful inventory search. [799-800]

At the trial of indictments charging two defendants with armed robbery, evidence that one of the defendants was the driver of an automobile which was parked near, but not directly by, a pharmacy in which a robbery was in progress, that after the robbery a second man came hurriedly from the pharmacy and climbed into the automobile, and that the car immediately drove off warranted a finding that that defendant was a joint venturer in the robbery. [801]

INDICTMENTS found and returned in the Superior Court Department on November 1, 1983.

The cases were tried before *William W. Simons,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for James M. Seminara.

*Francis X. Spina* for Glenn C. Haynes, Jr.

*Daniel A. Ford,* Assistant District Attorney, for the Commonwealth.

KASS, J. Upon jury verdicts, the defendants were convicted of armed robbery of a pharmacy — Seminara as the holdup man and Haynes as the driver of the get-away car. There was evidence enabling the jury to find as follows.

On August 18, 1983, a man approached a clerk, Cindy Houghtling, said softly to her, "This is a holdup," and pointed to a gun handle protruding from his belt or the waistband of his dungarees. Houghtling bent down behind the counter, as she was told by the robber. She heard the sound of money being taken from the cash register, and when she heard the man run out she got up and was able to watch him head away on foot.

Houghtling alerted the pharmacy owner, Kenneth Camyre, who made it to the door in time to see a man run across the street and enter the passenger side of a car he took to be a gold Camaro with a black vinyl top and New York registration plates. A neighbor, Phyllis Croshier, who lived four houses down from the pharmacy, had seen the same car (she described it similarly, except that she did not identify the make) draw up and park opposite her house, facing in the wrong direction. The driver remained in the car. A second man, who wore a baseball cap, came hurriedly downhill from the pharmacy and climbed into the car, which immediately took off. The man who robbed the pharmacy and the man who entered the car possessed certain common features: each stood about five feet eight inches tall, wore wire-rimmed glasses, and had a moustache and a stubbly beard — as if needing a shave.

Officer White, of the Pittsfield police, alerted by Houghtling and Camyre, spotted and began to follow a gold Barracuda with a black vinyl top and New York plates. As soon as White and his marked cruiser were noticed by the occupants of the gold-colored car, that car abruptly accelerated. A chase well above the speed limit ensued; the gold-colored car headed towards the New York State line. The gold car missed a turn and crashed into a telephone pole. Both driver and passenger were promptly arrested, the driver after a last hapless effort to hurdle a hedge ended in a pratfall. The passenger, the defendant Seminara,[2] had a moustache and two or three days' growth of beard. In the car, police found what appeared to be a revolver (it turned out to be a toy) wrapped in a baseball cap, and about fifty-four dollars lying between the two front seats. The handle of the revolver resembled what Houghtling had seen protruding from the robber's jeans. Police found a pair of wire frame glasses when they made an inventory of the contents of the car the day after the arrest. Between them, the defendants raise six issues on appeal.

1. *Integrity of the grand jury proceedings.* The grand jury heard descriptions of the robber, his gun, and the get-away car

---

[2] The driver was the defendant Haynes.

from Houghtling, Camyre, and Croshier, and testimony from two police officers about the defendants' flight, their appearance when apprehended, and the items found in the car. Before the grand jury, Croshier's testimony was more inculpatory than at trial because she described the get-away car as parked with its engine running. Towards the end of the testimony of the fifth witness, Detective Collias, a grand juror asked whether any attempt had been made to have a lineup. To answer that question the Commonwealth called William A. Rota, the assistant district attorney who had previously been assigned to the case.

Mr. Rota testified that he had moved for a lineup as to Seminara while the case was in the District Court. In the course of explaining the District Court's loss of jurisdiction before that motion had been acted upon, Mr. Rota told the grand jury: "Seminara and . . . Haynes elected to proceed without a bind-over hearing.[3] They elected to admit that there was probable cause at that point in time at the District Court and in that case there was enough evidence that the case could at least go to the Grand Jury." Of course, the defendants had not admitted to probable cause; they had waived a bindover hearing. The presenting assistant district attorney, somewhat half-heartedly, undertook to rescue Mr. Rota from his gaffe. Her next question was: "And as a result of them giving up their right to have a probable cause hearing at which they would be present and the witnesses would be present what position did they take about your line-up motion . . .?" An express correction that the defendants had not admitted to probable cause would have been more effective. In any event, Mr. Rota declined to be saved. "Once they had admitted probable cause," he replied, "the case was no longer in the District Court."

The defendants moved to dismiss the indictments on the ground that Mr. Rota's inept remarks had impaired the integrity of the grand jury proceeding. See *Commonwealth* v. *O'Dell,*

---

[3] See generally G. L. c. 218, § 30; *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 528 (1974); Smith, Criminal Practice and Procedure § 667 (2d ed. 1983).

392 Mass. 445, 446-447 (1984); *Commonwealth* v. *McGahee,* 393 Mass. 743, 746-748 (1985). The judge denied the motion to dismiss, concluding that "in the context of the proceedings, I find it unlikely that the [g]rand [j]urors were of such a mind that it made any difference or was prejudicial to the [d]efendants." We are of like opinion.

Courts and commentators have been alert to manipulation of evidence and proceedings before a grand jury. Prosecutors have an obligation to refrain from "words or conduct that will invade the province of the grand jury or tend to induce action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them." *Commonwealth* v. *Favulli,* 352 Mass. 95, 106 (1967). Abuse of subpoena, immunity, and contempt powers to conduct fishing expeditions and to coerce persons who choose to remain silent are among the areas of concern. See Arenella, Reforming the State Grand Jury System: A Model Grand Jury Act, 13 Rutgers L. Rev. 1, 9 (1981). Selective presentation of evidence in a manner which distorts it is another example of conduct which taints the integrity of the process. *Commonwealth* v. *O'Dell,* 392 Mass. at 446-447. *Commonwealth* v. *Connor,* 392 Mass. 838, 854 (1984). Compare *Commonwealth* v. *McGahee,* 393 Mass. at 746-748.

No such conscious manipulation of the grand jury here occurred. To be sure, a blunder can inflict as much damage as a malevolent thrust, but the damage from Mr. Rota's ill-spoken remarks was surely slight. It was held in *Morrissette* v. *Commonwealth,* 380 Mass. 197, 200 (1980), for example, that testimony that a District Court judge had found probable cause did not invade the province of the grand jury, "so long as the grand jurors are instructed that such a finding must not interfere with their independent evaluation of the facts." *Ibid.* As in *Morrissette,* in the absence of facts requiring another conclusion, we may assume that the grand jury received instructions to use their independent judgment.

Arguably, Mr. Rota's unhappy choice of words, i.e., that the defendants had admitted probable cause, had the vice of suggesting, incorrectly, an admission by the defendants of the

very issue to be decided by the grand jury. See *Commonwealth* v. *O'Dell,* 392 Mass. at 449. Such suggestion was unlikely. Mr. Rota's remarks were bracketed with procedural lingo. The general impact of what he said was that the defendants had elected to opt out of District Court proceedings and submit themselves to the grand jury. Surely there was no point in that step if the defendants had conceded the very question which the grand jury had to answer: Was there probable cause to believe that a crime had been committed? *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 532 (1974). Ms. Fournoy, the assistant district attorney who was presenting the government's evidence, emphasized the procedural nature of the steps taken by the defendants.

Above all, the timing of Mr. Rota's remarks rendered them harmless beyond a reasonable doubt. By the time he testified, the jury had heard five witnesses speak to the events of the robbery, the description of the get-away car, the appearance and dress of the robber, the chase, the apprehension of the defendants, and what was found in the car. In contrast to *O'Dell,* in which the case rested heavily on a statement O'Dell had made to the police, the case against the defendants rested on the testimony of eyewitnesses, from whom the grand jury had heard before Mr. Rota was called. Their evidence was enough to support the indictment. Compare *Commonwealth* v. *O'Dell,* 392 Mass. at 447-451; *Commonwealth* v. *McGahee,* 393 Mass. at 746-747; *Commonwealth* v. *McGuire,* 19 Mass. App. Ct. 1013, 1014 (1985).

The defendants also object that Mr. Rota should not have been permitted to testify that Seminara's lawyer had opposed a lineup. There was no error. A defendant has no constitutional right to avoid appearing in a lineup or to refuse to alter his appearance beforehand. *Commonwealth* v. *Cinelli,* 389 Mass. 197, 206-207 (1983), and cases cited. The government's response to a juror's question was not barred by the rule which proscribes comment about the exercise by a defendant of a constitutional right. Cf. *Commonwealth* v. *Sazama,* 339 Mass. 154, 157-159 (1959). In any event, it must be borne in mind that it is inevitable that a grand jury "will frequently be exposed

to information that would be excluded at trial." *Commonwealth v. Brien,* 19 Mass. App. Ct. 914 (1984). Here again it is necessary to draw a distinction between a lapse and "concertedly guid[ing] the grand jury's attention into improper, nonprobative, inflammatory areas." *Ibid.* The same principles apply to other evidence asserted by the defendant Haynes to be inaccurate. If so, those inaccuracies were matters of minor detail which could not have distorted the over-all picture.

2. *Admission of detective's testimony regarding Houghtling's extrajudicial identification.* At trial, Cindy Houghtling was unable to recognize the robber in the courtroom. She testified that on the afternoon of the robbery she had made an equivocal identification from a photographic array: "I couldn't really pick him out in the pictures, but there was one picture that looked similar so I said it looked like him, but I wasn't sure." The prosecutor did not show her any photographs on direct examination, and defense counsel did not cross-examine her on the photo selection.

Later, the prosecution elicited testimony from Detective Collias that Houghtling had tentatively identified a photo as of someone who "looked like a person she recognized [although] she wasn't positive," and that the photo was of Seminara. Defense counsel timely objected that Houghtling's remarks about the photo did not constitute an identification and that, if there had been an identification, there was no verification that the picture Collias referred to was the same one that Houghtling testified she had selected.[4] The objection was overruled. The photo singled out by Collias was admitted in evidence, over a general objection, and was referred to in the prosecution's closing argument. Defense counsel did not attempt to recall Houghtling to probe her own recollection of the photo.

---

[4] It does not affect our analysis as to Seminara that these specific objections were raised by Haynes' attorney, while Seminara's attorney objected only that use of the mugbook was irrelevant and highly prejudicial. The issues were fairly presented to the trial judge in time for him to take what action he saw as necessary.

Admission of the photograph and Collias' testimony about Houghtling's identification of it was error under *Commonwealth* v. *Daye,* 393 Mass. 55, 61-63 (1984). Had Houghtling been questioned about her extrajudicial identification of the photo and had she adopted it, that identification would have been admissible as probative evidence. *Id.* at 61 & n.9 (1984). *Commonwealth* v. *Cappellano,* 17 Mass. App. Ct. 272, 276-277 (1983), *S.C.* 392 Mass. 676, 679-680 (1984). Had she denied selecting that photo or been unable to recall whether it was the one, the officer's attribution of the identification to her would have been admissible only for impeachment. *Commonwealth* v. *Daye,* 393 Mass. at 61 & n.9. Here, as in the *Daye* case, the Commonwealth should not have been allowed to bootstrap the photo into the category of substantive evidence by failing to ask the identifying witness to select it again at trial. *Id.* at 62-63. Compare *People* v. *Gould,* 54 Cal. 2d 621, 625-626, 631 (1960).

We think insufficient the Commonwealth's response that no error occurred because Houghtling was available for cross-examination. Compare *State* v. *Fennell,* 7 Or. App. 256, 258-264 (1971). The government had not attempted to introduce through Houghtling, or to have her identify, the picture she thought looked similar. There was no reason for Seminara's counsel to put his client's head in the lion's mouth by questioning Houghtling about the pretrial picture identification. See *Commonwealth* v. *Daye,* 16 Mass. App. Ct. 645, 649 (1983), *S.C.* 393 Mass. 55 (1984). As Houghtling's testimony stood at the end of her direct examination, her account of looking at a photo display had done Seminara no harm. When the government put Seminara's picture in evidence through Detective Collias as the picture Houghtling had picked, it was on a day of trial following that on which Houghtling had testified. It is by no means clear that she was readily subject to recall or that it was the obligation of the defense to attempt to recall her. Rather the Commonwealth should have inquired of her about the picture and then the testimony of Collias could have come in as confirmation or impeachment. As it was, the testimony of Collias presented the hazard of error or falsity in the

reporting which makes hearsay such as that of Collias too limited in its probative worth to be admissible as substantive evidence. See *Commonwealth* v. *Daye,* 393 Mass. at 61 & n.9, and 72.

It remains to consider whether the erroneous admission of Seminara's photograph was harmless. The identification evidence that was properly admitted sketched a profile of the robber that resembled Seminara (when apprehended) chiefly as to facial hair. There was cogent circumstantial evidence linking the car and the hat, gun, glasses, and money found in it to the robbery and to the defendants. Haynes' flight from the police was the other major piece of evidence for the prosecution.

Although the circumstantial evidence against the defendants was surely strong (and reflected alert police work), it was not overwhelming. See *Commonwealth* v. *Hanger,* 377 Mass. 503, 511 & n.8 (1979); *Commonwealth* v. *Cohen,* 6 Mass. App. Ct. 653, 657-658 (1978). Cf. *Commonwealth* v. *Billups,* 13 Mass. App. Ct. 963, 964 (1982). We are unable to conclude that the photographic identification could not possibly have been significant to the jury in their deliberations. See *Commonwealth* v. *Colardo,* 351 Mass. 76, 79 (1966); *Commonwealth* v. *Pleasant,* 366 Mass. 100, 101-103 (1974); *Commonwealth* v. *Schulze,* 389 Mass. 735, 741-742 (1983); *Commonwealth* v. *Marks,* 12 Mass. App. Ct. 511, 521 (1981). Indeed, as a tangible link to Seminara which the jurors could see and ponder during their deliberations, the picture was quite strong. Compare *Commonwealth* v. *Hoppin,* 387 Mass. 25, 30-31 (1982). The prosecutor thought so. In closing argument, he referred to Houghtling's selection of Seminara's photo in a way that enhanced its credibility as probative evidence.[5] Cf. *Common-*

---

[5] The prosecutor argued: "She said she wasn't sure. She was honest . . . but of all those photographs, who does she pick out as resembling the person who robbed her? James Seminara. Look at that photograph upstairs. Notice the mustache, notice the stubble. Quite a difference from how he looks now, isn't it? . . . No wonder Cindy Houghtling couldn't pick him out when she testified in this courtroom on Wednesday." Later in his closing he said, . . . "but of all the photographs that Cindy had to choose from . . . the only one that her attention was directed to was the photograph of

*wealth* v. *Sheline,* 391 Mass. 279, 287 (1984); *Commonwealth* v. *Howard,* 8 Mass. App. Ct. 318, 319-323 (1979). Especially in view of that circumstance, the purported selection of the defendant's photograph — even if it constituted at best an equivocal identification — was more potent than the other identification evidence, which merely described physical characteristics common to many men. Contrast *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 280, cert. denied, 371 U.S. 852 (1962); *Commonwealth* v. *Blow,* 370 Mass. 401, 404 (1976); *Commonwealth* v. *Williams,* 378 Mass. 217, 229-230 (1979); *Commonwealth* v. *McDermott,* 393 Mass. 451, 454 (1984); *Commonwealth* v. *Bray,* 19 Mass. App. Ct. 751, 753-755, 758-759 (1985).

On balance there was enough potential force to the photograph and Collias' testimony about its selection so that we cannot shrug off the error attending its admission as harmless. There is danger in speculation long after the fact about what impact inadmissible evidence may have had on a jury's reasoning. *Commonwealth* v. *Gilday,* 367 Mass. 474, 498-499 (1975). *Commonwealth* v. *Royce, ante* 221, 228-229 (1985). Harmless error, beyond a reasonable doubt, is a useful and practical principle but must be applied with restraint, *id.* at 228, and courts should set aside a conviction unless sure that the error did not influence the jury, or had but slight effect. *United States* v. *Agurs,* 427 U.S. 97, 112 (1976). *Commonwealth* v. *Gilday,* 382 Mass. 166, 178 (1980). See generally Allen, A Serendipitous Trek Through the Advance-Sheet Jungle: Criminal Justice in the Courts of Review, 70 Iowa L.Rev. 311, 329-335 (1985). In this case the judgment must be reversed.

Haynes was so inextricably linked with Seminara on the Commonwealth's theory of the case, that the erroneous admission of Seminara's photograph was bound to have a spill-over effect on Haynes. Counsel for Haynes made timely objection

---

Mr. James Seminara. That's no coincidence. . . . Cindy Houghtling's attention was drawn to that photograph because James Seminara is the man who stood before her with the gun and took that money out of the cash register."

to introduction in evidence of the photograph. For that reason we reverse the judgment against Haynes, as well as that against Seminara.

3. *Order of closing argument.* Counsel for Haynes, Mr. Spina, moved to argue last. That motion was denied and, following the prosecution's closing argument, Mr. Spina requested leave to make a rebuttal. That, too, was denied. On appeal, Haynes argues that he was entitled to close as a matter of right under the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution, and art. 12 of the Massachusetts Declaration of Rights. It is enough to say that Mass.R.Crim.P. 24(a)(1), 378 Mass. 895 (1979), prescribes that the defendant shall present his closing argument first. While there are advantages to having the last word, there are countervailing advantages to having the first word. In any event, the final words that the jury hears are those spoken in the judge's charge. As a matter of common sense, the order of argument does not rise to a question of constitutional dimension. That the drafters of the Federal Rules of Criminal Procedure have endorsed a different order of argument does not — as Haynes contends — compel the Massachusetts courts to do the same. See Fed.R.Crim.P. 29.1 and Advisory Committee Note. Moreover, although under the Federal rule the prosecution opens final arguments and the defense replies, the prosecution is permitted a rebuttal. If defense counsel hears prejudicial error in the prosecutor's closing, there is an opportunity to object, request curative instructions, or move for a mistrial. See *Commonwealth* v. *Gouveia,* 371 Mass. 566, 571-572 (1976); *Commonwealth* v. *Holland,* 10 Mass. App. Ct. 845, 846 (1980).

4. *Motion to suppress evidence taken from the car.* Before trial, Haynes moved to suppress the plastic gun, baseball hat, money, eyeglasses, and glasses case found in the car that he was driving just before his arrest. After hearing, the trial judge denied the motion, finding that the gun, hat, and money had been seized in a lawful search incident to arrest of the defendants, and that the glasses had been taken pursuant to a legitimate inventory search of the vehicle made on the following day. The

judge made subsidiary findings of fact, based on the testimony he heard, which we accept in the absence of clear error. *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980). *Commonwealth* v. *Sumerlin,* 393 Mass. 127, 129 n.2 (1984).

If one considers the events preceding the search it becomes apparent that the warrantless search was lawful and the motion to suppress was rightly denied. Following the robbery at the South Side Pharmacy a police radio transmission went out alerting officers to look for a gold-colored car with New York license plates and two white males in it. A car answering those specifications sped away from a marked police cruiser and did not stop when the officer turned on flashing lights and a siren. The driver tried to flee on foot after he crashed the car. Officer White, the arresting officer, had probable cause to believe a crime was being committed and to arrest both defendants and to search the passenger compartment of the car incident to the arrest. See *Commonwealth* v. *Gullick,* 386 Mass. 278, 283-284 (1982); *Commonwealth* v. *Markou,* 391 Mass. 27, 31 (1984); *Commonwealth* v. *Carrington, ante* 525, 528-529 (1985). The search could also be justified for the reasons discussed in *Commonwealth* v. *Cosme,* 15 Mass. App. Ct. 448, 452-453 (1983).

The trial judge validly reached the conclusion, based on the oral testimony before him, that the later search which yielded the wire-rimmed glasses was a valid inventory search. *Commonwealth* v. *Matchett,* 386 Mass. 492, 509-511 (1982). Cf. *Commonwealth* v. *Ford,* 17 Mass. App. Ct. 505, 508-509 (1984), *S.C.* 394 Mass. 421, 423-426 (1985).

5. *Other matters.* The charge to the jury on identification was consistent with what counsel had agreed to at a bench conference prior to the judge's instructing the jury. Fairly read, the judge's charge did not place Seminara in the store as the robber and instructed the jury on essential elements of the case. See *Commonwealth* v. *Lutz,* 9 Mass. App. Ct. 357, 362 (1980). In any event, it is unlikely that precisely the same ground for complaint about the instruction (made only on behalf of Seminara) would recur at a new trial.

There is nothing to Haynes' argument that he was entitled to a required finding of not guilty. The testimony making him appear to be a get-away driver (parked near, but not directly by the pharmacy, and the quick get-away), coupled with his flight by vehicle and on foot, was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Haynes was a joint venturer in the holdup. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979); *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 243-244 (1982); *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509-511 (1983).

*Judgments reversed.*

*Verdicts set aside.*