## COMMONWEALTH *VS.* TEODORO MACHORRO (No. 1).

No. 07-P-623.

Suffolk. May 15, 2008. - August 15, 2008.[1]

Present: PERRETTA, DUFFLY, & GRAINGER, JJ.

*Indecent Assault and Battery. Identification. Evidence,* Identification.

At the trial of indictments charging rape and indecent assault and battery, the judge properly admitted a police officer's testimony about one victim's extrajudicial identification of the defendant, where the testimony — which the jury decided to credit — was helpful to them in evaluating the over-all evidence as to the perpetrator's identity, and where defense counsel was free to cross-examine that victim as to the basis for her testimony that the man who was arrested was the same man who had assaulted her. [379-381]

INDICTMENTS found and returned in the Superior Court Department on October 28, 2004.

The cases were tried before *Margot Botsford,* J.

*William S. Smith* for the defendant.

*Sarita R. Wright (Anne M. Thomas & Tara B. Burdman,* Assistant District Attorneys, with her) for the Commonwealth.

GRAINGER, J. On indictments for rape and indecent assault and battery, a jury returned guilty verdicts on the indecent assault and battery charge and, as a lesser included offense of the rape charge, on a second count of indecent assault and battery. The defendant appeals from the judgments on divers grounds. We consider in this opinion only the defendant's assertion of error related to the admission of extrajudicial identifications, disposing of his other claims in a memorandum and order pursuant to our rule 1:28 also issued this day. *Commonwealth* v. *Machorro (No. 2), post* 1113 (2008).

*Background.* Based on the evidence at trial, the jury could have found the following facts. On the night of the incident,

---

[1] In one of the indictments, the defendant's first name appears as Teodore.

from approximately 8:00 P.M. until 2:00 A.M., Jane and Mary[2] were out for dinner and drinks at various locations. At 2:00 A.M., they left their last location and were walking on Brighton Avenue to a friend's home when they noticed someone running up behind them. As they kept walking, the person reached between Jane's legs, under her skirt, and touched her. The assailant's hand was under her skirt for "a few seconds." Both Jane and Mary turned around in shock to face the assailant. He then approached Mary, who was wearing pants, and touched her "crotch area" for "[m]aybe three seconds."

The assailant then crossed the street and started walking quickly in the opposite direction on Brighton Avenue. Jane crossed the street and, following him at a distance of approximately seven to eight feet, called the police on her cellular telephone. Mary did not cross the street, but also walked along Brighton Avenue and followed the assailant. Jane approached a parked ambulance and pointed out the man she was following to the two emergency medical technicians (EMTs) seated inside. At that point, the assailant was approximately fifteen feet from the ambulance. The EMTs got out of the ambulance and began to follow the assailant on foot.

Meanwhile, Jane crossed Brighton Avenue and walked toward a police cruiser that one of the EMTs indicated to her. She pointed to the man she was following and got the attention of State police Trooper John Analetto, who was inside the cruiser. As the assailant began crossing onto Harvard Avenue, Analetto turned his cruiser onto Harvard Avenue and followed him, activating his blue lights. The assailant started to run, and one of the EMTs followed him, chasing him past people on the sidewalk. Jane also followed, running behind the cruiser and keeping her attention on the man. Trooper Analetto ultimately pulled over, cutting off the assailant. Analetto got out of his cruiser, drew his weapon, and ordered the assailant to the ground. He complied, and Analetto handcuffed him. When Jane and Mary arrived at the arrest scene, the assailant was face down on the ground.

The defense at trial hinged on the evidence of identification. Trooper Analetto testified that the defendant was the man he ar-

---

[2]Jane and Mary are both pseudonyms.

rested that night. Boston police Officer Michael Estepe, who was also at the scene, testified that at the time of the arrest both Jane and Mary identified the man in handcuffs as the assailant.

Neither Jane nor Mary could identify the defendant as their assailant at trial. However, Jane acknowledged that she had identified the assailant at the scene and testified that she never lost sight of him from the time he assaulted her until the time he was arrested. She was "one hundred percent confident" that the man handcuffed at the scene of the arrest was her assailant. Mary was not asked if she had identified her assailant at the scene. We refer to additional facts as they become relevant.

*Admissibility of the extrajudicial identifications.* The defendant argues that Officer Estepe's testimony about Mary's extrajudicial identification was inadmissible.[3] He relies upon *Commonwealth* v. *Bassett*, 21 Mass. App. Ct. 713, 719-720 (1986), and *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 690-691 (1991), which stood for the proposition that a victim's extrajudicial identification is inadmissible when the victim does not testify about the extrajudicial identification at trial. However, we must consider whether this proposition since has been superseded, as the Commonwealth urges, by *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 435-442 (2005).[4] See *Commonwealth* v. *Raedy*, 68 Mass. App. Ct. 440, 446-447 (2007).

The general reasoning behind the rule allowing admission of prior extrajudicial identifications is that "an identification made soon after an event is generally more reliable than one made later when memory may have faded and suggestiveness might have become a factor." *Morgan, supra* at 690. See *Cong Duc Le, supra* at 441. The *Morgan* court recognized this rule, but found it inapplicable because the victim in that case had not been asked about the identification at trial: "[w]here there is a dispute not only as to the accuracy of a pretrial identification, but also as to whether the identification was in fact made, the evidential value of the prior identification is almost completely

---

[3]The defendant conceded at oral argument before this court that this argument applies only to Mary, as Jane explicitly acknowledged her prior extrajudicial identification at trial.

[4]There is no doubt that *Cong Duc Le* applies to this case; although the defendant was indicted in 2004, he was not tried until 2006.

dissipated.'' *Morgan, supra,* quoting from *Commonwealth* v. *Daye,* 393 Mass. 55, 61 (1984), overruled in part, *Cong Duc Le, supra* at 435-442.

Although *Cong Duc Le* did not explicitly overrule *Morgan,* it overruled this portion of *Daye* and specifically disapproved of the *Daye* language that *Morgan* quoted, stating:

> "In light of more recent experience under the Federal rule, that pessimistic assessment of the value of disputed prior identification evidence is no longer warranted. As with any other situation where the jury are confronted with disputed testimony concerning identification, they can determine whose version to believe — the witness who claims not to remember or disavows the prior identification (including that witness's version of what transpired during the identification procedure), or the observer who testifies that the witness made a particular prior identification."

*Cong Duc Le, supra* at 439-440. This reasoning is applicable here as well. In *Cong Duc Le,* the jury decided which of two conflicting accounts to believe, whereas, here, the jury decided whether to believe Officer Estepe in light of the absence of any testimony from Mary on the matter. It remains true that Officer Estepe's testimony was helpful to the jury "in evaluating the over-all evidence as to whether the defendant on trial was the one who committed the charged offense." *Id.* at 440.

The concern of the *Morgan* court that "[d]efense counsel was not required 'to put [his] client's head in the lion's mouth' by questioning [the victim] about a description he might have given to the police" also does not apply here. *Morgan, supra* at 691, quoting from *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. 789, 796 (1985). Indeed, it is questionable whether this perspective survived *Cong Duc Le,* as it ultimately was predicated upon language in *Daye* (now refuted by *Cong Duc Le*) that "[i]t is illogical to suggest that the mere fact of his presence on the stand afforded the defendant a genuine opportunity to cross-examine [the witness] concerning an out-of-court identification he so unequivocally disclaimed." *Commonwealth* v. *Daye,* 16 Mass. App. Ct. 645, 649 (1983), *S.C.,* 393 Mass. 55 (1984). Moreover, the ability adequately to cross-examine Mary was not

a concern here. Although Mary was not asked whether she made any identifications when the assailant was arrested, she testified at trial that she was "pretty sure" the man who was arrested was the same man who had assaulted her. Defense counsel was free to cross-examine her as to the basis for her belief.

*Judgments affirmed.*