## COMMONWEALTH vs. JOSEPH D. MAIOLI.

Suffolk. November 12, 1980. — January 16, 1981.

Present: HALE, C.J., ROSE, & NOLAN, JJ.

*Evidence*, Bias, Impeachment of witness, Prior consistent statement, Prior inconsistent statement, Identification. *Practice, Criminal*, Confrontation of witnesses.

The judge at a criminal trial did not err in excluding questions designed to show that a Commonwealth witness was, at the time he testified, in Bridgewater State Hospital for observation in connection with an unrelated charge where defense counsel had been permitted to inquire as to the pending charge and was offered the opportunity to inquire as to the witness's "civilian residence" and where the witness's commitment for observation was temporary, for the sole purpose of determining his competency to stand trial or his criminal responsibility, and was not within the control of the prosecution. [180-181]

At a criminal trial, there was no error in admitting in evidence a transcript of a Commonwealth witness's grand jury testimony to rebut an inference that the witness had falsified his testimony at trial so as to obtain a favorable disposition of a pending criminal charge brought against him shortly before the defendant's trial where it appeared that the witness was not aware of a default warrant outstanding against him at the time he testified before the grand jury. [181-183]

Where a witness at a criminal trial testified that he had observed the defendant in the passenger seat of an automobile shortly before the driver of the automobile was involved in a shooting incident but that he observed only one person in the automobile immediately after the shooting, there was no error in permitting the prosecutor to ask the witness whether he had told a police officer a short time after the shooting that he had in fact observed the defendant in the passenger seat when he saw the automobile after the shooting. [183-184]

INDICTMENTS found and returned in the Superior Court Department on November 6, 1979.

The cases were tried before *McGuire*, J.

*William J. Leahy* for the defendant.

*Carol Anne Fagan,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with her) for the Commonwealth.

HALE, C.J.   The defendant appeals from his convictions on indictments charging armed assault with intent to murder (G. L. c. 265, § 18) and assault and battery by means of a dangerous weapon, a pistol (G. L. c. 265, § 15A), and raises three issues which we discuss seriatim.

We first briefly summarize facts which could have been found by the jury.  On the evening of October 24, 1979, James Marcella shot Edward Portelle within an hour after an altercation between the two.  The defendant was with Marcella at the time of that altercation, but separated from him shortly thereafter.  The defendant rejoined Marcella in the latter's car and searched for Portelle, who was aware that they were looking for him.  Later when their paths crossed, Portelle approached Marcella's car and kicked the door at the driver's side.  Marcella rolled down the window of that door and shot Portelle.  Portelle stumbled around the back of the car and the defendant, who was seated in the passenger's seat, rolled down the window by his side, leaned back in his seat and in street language exhorted Marcella to "get" Portelle.  Marcella then leaned across the defendant and shot at Portelle again.

1.  A government witness, one Czaja, testified as to the shooting and described certain features and clothing of the passenger of the car from which shots were fired at the victim.  After cross-examining the witness as to his observations, defense counsel sought to impeach the witness with a record of a conviction in 1977.  The defendant was also permitted to show that the witness had been arrested on a charge of assault and battery with a dangerous weapon less than a month before trial, which charge was pending in a District Court at the time of trial.  See *Commonwealth v. Hogan,* 7 Mass. App. Ct. 236, 240-242 (1979), *S.C.,* 379 Mass. 190, 191 (1979).

Defense counsel then asked the witness, "Where are you presently residing?"  The prosecutor's objection was sus-

tained, and the judge informed defense counsel, "You may ask him what his civilian residence is." Defense counsel then made an offer of proof that he had been informed by the prosecutor that the witness was currently at Bridge- water State Hospital for observation in connection with the pending charge, and that he expected that the witness would so testify. Defense counsel stated that his "theory of admissibility" was based on *Alford* v. *United States*, 282 U.S. 687 (1931), and that as the witness "[is] in the custody of the government at the present time, and by virtue of that fact, his testimony might be influenced." It is on this same basis that the claim of error is argued in this court. While we do not quarrel with the theory of admissibility advanced by the defendant, we are of the opinion that the judge's rul- ing was well within the area of his discretion. The defend- ant had been afforded extensive cross-examination of the witness and had not been denied the right to "identify[] the witness with his environment." See *Commonwealth* v. *Mc- Grath*, 364 Mass. 243, 251 (1973). He had been permitted to inquire as to the pending charge and was offered the op- portunity to inquire as to the witness's "civilian residence." The witness's commitment for observation was temporary — it was limited to twenty days with the possibility of an extension to forty days — and was for the sole purpose of de- termining the witness's competency to stand trial or his criminal responsibility. See G. L. c. 123, § 15, as amended through St. 1978, c. 478, § 70. Testimony as to such a com- mitment would not serve to identify the witness with his community. Moreover, the matter of commitment for ob- servation was the concern of the court and the examining physicians alone, and was not within the control of the pros- ecution. See *Commonwealth* v. *Cox*, 327 Mass. 609, 613-614 (1951). Thus, it could not properly be considered by the fact finder as having had the effect on the witness's testimony which was of concern to the court in *Alford*, *supra* at 693.

2. Over the defendant's objection the court admitted a transcript of Czaja's testimony given in November, 1979,

before the grand jury which returned the indictment in this case. The basis for offering the transcript was to rebut, by a prior consistent statement, the possible inference that the witness had falsified his testimony to curry favor with the prosecution so as to obtain a favorable disposition of the pending charge against him. The defendant concedes that this could be a legitimate reason to admit the grand jury testimony (*Commonwealth* v. *Jenkins*, 10 Gray 485, 489 [1858]; *Commonwealth* v. *Haywood*, 377 Mass. 755, 762-763 [1979], and authorities cited therein), but argues that the pending charge was not the basis for his objection. Rather it was based on an outstanding default warrant for the witness's violation of probation imposed in the case in which he had been convicted in 1977. The defendant contends that, as Czaja was subject to arrest and subsequent revocation of his probation, he was not free from official pressure and the potential for bias; thus, the grand jury testimony was — "as suspect as any later testimony" and should not have been submitted to support his testimony at trial. See *Haywood, supra* at 762 n.6. This argument would be persuasive (see *United States* v. *McPartlin*, 595 F.2d 1321, 1351-1352 [7th Cir.], cert. denied, 444 U.S. 833 [1979]) except that there is no indication in the record that Czaja was aware of the existence of any default or warrant for his arrest. (Czaja testified that he was not aware of any warrant for his arrest.) We have examined the record of conviction in the 1977 case which was an exhibit at trial and is now before us. We note from the docket entries of that case, which are a part of the exhibit, that there is an entry dated August 22, 1978, which reads "Warrant [blank space where apparently no impression was made by a rubber stamp] ion of conditions of probation." We think this can safely be read, "Warrant issued for violation of conditions of probation." Who requested the warrant or the reason for its issuance does not appear. There is also no indication that it was ever served.

Unless Czaja knew of the warrant he could not have been "pressured" by it and there would have been no motive for

him to falsify his grand jury testimony. See *United States* v. *Lombardi*, 550 F.2d 827, 828-829 (2d Cir. 1977). Compare *Gordon* v. *United States*, 344 U.S. 414, 422 (1953). There was no error in this regard.

3. One Johnson, a prosecution witness, testified that he twice observed the defendant riding in the passenger's side of Marcella's car. He testified that he made his second observation about fifteen minutes before he heard what sounded to him like four firecrackers. Then the car in which he had observed the defendant riding came from the direction of the sounds. He also testified that he observed but "one head" in the car. The witness had given a statement to the police a short time after the shooting, which had been reduced to writing and signed by him. He was shown that statement by the prosecutor who was allowed to ask the following question regarding the witness's observation of the car after the shooting: "Did you tell Detective O'Rourke that you saw [Marcella] driving the car with Joe [the defendant] in the front seat?" The witness answered, "Yes, I did."

"[W]hen a witness is unable or unwilling to make an in-court identification, out-of-court identifications may be admitted as substantive evidence of guilt as long as the defendant's due process and confrontation rights are satisfied." *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 408 (1978), and authorities cited therein. We are of the opinion that the judge's reliance on the foregoing principle in making his ruling was proper.

Defense counsel thoroughly cross-examined the witness and drew from him, among other things, the statements that the version first given in his testimony on direct (that he saw only one person in the car) was the truth and that the signed statement referred to his observation of the defendant earlier that evening. The defendant argues error only on hearsay grounds. He does not contend that his constitutional right to confrontation was violated, but we note, nevertheless, that this cross-examination satisfied the defendant's rights of confrontation. *Commonwealth* v. *Fitzgerald, id.* at 409.

"The fact that [Johnson's] testimony was inconsistent and contradictory does not [as defendant argues] render the evidence insufficient; all of [the witness's] statements are entitled to be considered as probative evidence." *Id.* at 411.

*Judgments affirmed.*