## Commonwealth *vs.* Thomas P. Raedy.

No. 06-P-43.

Plymouth. October 12, 2006. - March 13, 2007.

Present: Rapoza, C.J., Laurence, & Green, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Required finding, Hearsay. *Evidence,* Hearsay, Identification.

At the trial of a criminal complaint charging the defendant with assault by means of a dangerous weapon (a bottle), the judge properly denied the defendant's motion for a required finding of not guilty, where the Commonwealth's evidence was sufficient to permit the jury to find beyond a reasonable doubt that it was the defendant's arm that swung the injurious bottle, in that there was evidence that the defendant had been identified at the crime scene as the assailant, as well as evidence allowing the jury to conclude that the defendant had motive and opportunity to commit the crime and had manifested consciousness of guilt. [442-446]

At a criminal trial, the testimony of a police officer regarding a witness's extrajudicial statement, made as part of her general statement to the police, that the defendant was the assailant was not inadmissible hearsay creating a substantial risk of a miscarriage of justice, where the witness, who was available for cross-examination, had disavowed the identification at trial. [446-450]

Complaint received and sworn to in the Hingham Division of the District Court Department on April 25, 2005.

The case was tried before *Ronald F. Moynahan*, J.

*Edward J. Juel* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

Laurence, J. After a one-day jury trial in August, 2005, the defendant, Thomas P. Raedy, was convicted of one charge of assault by means of a dangerous weapon (in violation of G. L. c. 265, 15A), arising out of an incident at the home of Barbara

Barry early in the morning of April 24, 2005.[1] Raedy was sentenced to two and one-half years in the house of correction, with six months suspended pending completion of four years' probation, drug counselling, and batterer's counselling. Raedy argues on appeal that the trial judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to establish that he was the perpetrator of the assault, and that the conviction should be overturned because it was obtained through the Commonwealth's use of (unobjected-to) hearsay identification testimony, resulting in a substantial risk of a miscarriage of justice. We affirm.

*Background.* We summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *O'Laughlin,* 446 Mass. 188, 190 (2006). On the evening of April 23, 2005, between five and ten people gathered at Barry's Hingham residence to socialize. Around midnight, Barry retired to one of the rear bedrooms of the house with her boyfriend, Matthew Bradbury, and the victim, Michael Griffin. At approximately 1:00 A.M., they heard "some commotion" from the front part of the house. Griffin heard shouting and banging that sounded like someone attempting to enter the residence. Barry testified that she recognized Raedy's voice yelling, "Who's the man of the house, who's the bouncer."[2] His voice sounded heated and upset. Barry had known Raedy for about one and one-half years, during part of which time he had been her boyfriend. Raedy

---

[1] On April 25, 2005, Raedy was charged with (1) entering a dwelling at night with intent to commit a felony, G. L. c. 266, § 18; (2) assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A; (3) destruction of property exceeding $250, G. L. c. 266, § 127; (4) assault, G. L. c. 265, § 13A(*a*); (5) threatening to commit a crime, G. L. c. 275, § 2; and (6) trespass, G. L. c. 266, § 120. Counts one, five, and six were dismissed before the jury were empanelled. At the conclusion of the trial, the judge directed a verdict of not guilty on the charge of assault. Raedy was also acquitted by the jury on the charge of destruction of property exceeding $250.

[2] On direct examination, Barry denied recognizing the voice that she heard as Raedy's. On redirect, however, she conceded that she did recognize Raedy as the shouter. The jury, aware that Barry was an unwilling witness whose attendance at the trial had to be compelled, could infer her hostility to the Commonwealth and were free to credit her later testimony. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 406, 410-411 (1978).

had not been invited to the gathering and had not been present earlier in the evening.[3]

Griffin went part way down the hallway to investigate the cause of the commotion, then retreated to the back bedroom and closed the door. The people in the bedroom heard furniture being thrown and the sound of glass breaking in the hallway. Griffin then either opened the door again, or it was pushed open from the outside, and someone in the hallway reached inside the room and smashed a glass liquor bottle over Griffin's head.[4] Griffin testified that he could not see who struck him. Barry testified that she saw the assailant's white forearm wielding the bottle that struck Griffin, but that she could not see the assailant's face.[5]

Hingham police Officer Philip Emmott was dispatched to Barry's house within minutes after the attack. By the time he arrived on the scene, at approximately 1:12 A.M., Raedy and his companion were no longer at the house. Emmott testified that, moments after his arrival, Barry reported to him that Raedy (whom she identified by name) had "broke[n] a bottle over [Griffin's] face." Emmott testified that Barry also told him where Raedy lived, which led to unsuccessful police efforts to locate him at his residence.[6]

*Discussion. Motion for a required finding of not guilty.* Raedy argues that the trial judge erred in denying his motion for a required finding of not guilty on the charge of assault by means of a dangerous weapon. He advances not merely the general claim that there was insufficient evidence identifying him as the assailant, but also the specific contention that there was no

---

[3]Barry testified that at some point (she did not specify whether it was before or after the assault), she saw Raedy (who is white) and his friend, Charles (who is a "dark-skinned . . . black" man), in the kitchen.

[4]Griffin was struck on the temple. Although he was dazed and bleeding from the blow, he declined to go to the hospital after the police summoned an ambulance.

[5]At trial, Barry denied or could not recall identifying Raedy by name to the police at the scene. As noted *infra*, Officer Emmott testified that at the scene she had in fact identified Raedy as the perpetrator.

[6]It is not evident from the record how Raedy was ultimately apprehended. At the time of trial he apparently was in custody on another, unrelated charge. He did not testify or present evidence at the underlying trial.

evidence "that any person had witnessed the perpetrator commit the assault and battery." Raedy's thesis reflects a fundamental misconception of our law, which does not unalterably require percipient eyewitness testimony to the crime charged in order to submit the case to the jury for its verdict. See *Commonwealth* v. *Lao*, 443 Mass. 770, 779-780 (2005) ("[T]he evidence of a defendant's guilt may be . . . entirely circumstantial. . . . Any weaknesses in . . . identification [evidence] were for the jury to weigh, and did not constitute grounds for a required finding of not guilty").

The Commonwealth's evidence against Raedy warranted such submission here under applicable standards. "In reviewing the denial of a motion for [a required finding of not guilty], we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979), cert. denied sub nom. *Doherty* v. *Massachusetts*, 502 U.S. 1094 (1992). Although "[t]he question of guilt must not be left to conjecture or surmise," circumstantial evidence, without the buttress of direct evidence, is, as noted above, "competent to establish guilt beyond a reasonable doubt," even in cases charging premeditated murder unwitnessed by anyone. *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000), quoting from *Commonwealth* v. *Anderson*, 396 Mass. 306, 312 (1985). Further, inferences "drawn from circumstantial evidence 'need only be reasonable and possible; [they] need not be necessary or inescapable.' " *Commonwealth* v. *Lodge*, 431 Mass. at 465, quoting from *Commonwealth* v. *Bush*, 427 Mass. 26, 30 (1998).

To prove the crime of assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A(*b*), the Commonwealth had to establish that (1) the defendant intentionally touched the victim, however slightly; (2) the touching was unjustified; and (3) the touching was done by means of (i.e., with) a dangerous weapon. See *Commonwealth* v. *Appleby*, 380 Mass. 296, 306-307 (1980). The only element at issue in this case was, and is, the identity of the offender. As noted earlier,

Raedy's central argument — that the Commonwealth's case failed because it presented no eyewitness who testified that he (or she) saw Raedy's face as he committed the assault — is meritless, because no such direct, contemporaneous evidence was required. See, e.g., *Commonwealth* v. *Sullivan*, 436 Mass. 799, 806-807 (2002) (witness's telephonic identification to police of former husband's voice on answering machine threatening her as his next shooting victim admissible); *Commonwealth* v. *Lao*, 443 Mass. at 773, 778-779 (identification of defendant walking away from victim's apartment building close to time when crime occurred, with door to building left open, allowed inference that defendant had just been in victim's building); *Commonwealth* v. *Ferrer*, 47 Mass. App. Ct. 645, 646-647 (1999) (sufficient evidence although no one actually saw gun in defendant's hand or flash of gunshot from his immediate vicinity); *Commonwealth* v. *Melton*, 50 Mass. App. Ct. 637, 645-646 (2001), *S.C.* 436 Mass. 291 (2002) (sufficient evidence even though no one directly identified defendant as shooter). "The identity of a third person always is a matter of inference and opinion . . . . It presents a judgment [for the jury] which may vary indefinitely in the degree of its certainty . . . ." *Commonwealth* v. *Cappellano*, 392 Mass. 676, 679 (1984), quoting from *Commonwealth* v. *Kennedy*, 170 Mass. 18, 24 (1897) (Holmes, J.).

The precise question before us "is whether, after viewing the [Commonwealth's] evidence in the light most favorable to the prosecution, *any* rational trier of fact" (emphasis in original) could have found beyond a reasonable doubt that it was Raedy's arm that swung the injurious bottle. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), *S.C.* 423 Mass. 129 (1996), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). On the evidence presented by the Commonwealth, supported by reasonable inferences that the jury were entitled to draw, the jury could find beyond a reasonable doubt that Raedy was the perpetrator as charged. In sum, the jury could reasonably have concluded that someone barged into Barry's home at approximately 1:00 A.M. on April 24, 2005, and that it was that person, rather than any of the people who had been present throughout the evening, who was responsible for the violent

intrusion into the back bedroom and assault on Griffin. The only people seen in the vicinity of the back bedroom at or near the time of the assault who were not present earlier were Raedy and his friend, Charles, who could not have been the assailant because he was black, while the attacker had a white forearm. From the nature of the heated yelling by the intruder — recognized as Raedy by Barry — and Raedy's past relationship with Barry, the jury could rationally infer that he was motivated by jealousy to attack whichever man he found sequestered with Barry.[7]

Raedy's presence in the immediate area of that crime at or near its commission was a significant additional factor supporting his guilt. See, e.g., *Commonwealth* v. *Bush*, 427 Mass. at 30 (defendant's voice heard from area of murder just before shots fired); *Commonwealth* v. *Lodge*, 431 Mass. at 465-466 (defendant admittedly present at time of murder); *Commonwealth* v. *Conkey*, 443 Mass. 60, 72-74 (2004) (evidence established defendant entered victim's home near time of murder). Also telling were the facts that Raedy had left Barry's residence by the time police arrived within minutes after the assault and that he could not be found at his own residence — circumstances that the jury could readily view as flight from the scene revealing his consciousness of guilt. See, e.g., *Commonwealth* v. *Ferrer*, 47 Mass. App. Ct. at 647.

Despite Barry's ultimate denial of making an identification of the perpetrator to Officer Emmott, a reasonable jury could credit Emmott's contrary testimony, that Barry did indeed identify Raedy as the assailant at the crime scene, over Barry's conflicting denial. See *Commonwealth* v. *Clements*, 436 Mass. 190, 192, 195 (2002) (reliability of extrajudicial identification disavowed in court is question for jury, despite witness's claims at trial that assailant's face was obscured, it was too dark to make identification, and he was drunk); *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 439-440 & n.8 (2005) ("where the jury are confronted with disputed testimony concerning identification, they can determine whose version to believe — the wit-

---

[7]Compare, e.g., *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985) (defendant had previously been in romantic relationship with victim's sister that ended badly).

ness who claims not to remember or disavows the prior identifica-
tion . . . or the observer who testifies that the witness made a
particular prior identification").

Thus, not only was there evidence that Raedy had been quickly
identified as the assaulter, but the Commonwealth additionally
provided the jury with evidence allowing them to conclude that
Raedy had motive to commit the crime as well as opportunity
and had manifested consciousness of guilt. We consequently af-
firm the trial judge's denial of Raedy's motion for a required
finding of not guilty.

*Hearsay.* Raedy argues that he is nonetheless entitled to a
reversal because the Commonwealth was erroneously permitted
to introduce Officer Emmott's testimony regarding Barry's ex-
trajudicial statement that he was the assailant. That, he claims,
was inadmissible hearsay and created a substantial risk of a
miscarriage of justice.[8] We disagree.

Testimony by a third party, such as a police officer, regarding a
witness's extrajudicial identification is substantively admissible if
the identifying witness is unable or unwilling to identify the
perpetrator in court and is available for cross-examination. *Com-
monwealth* v. *Cappellano,* 17 Mass. App. Ct. 272, 276-277
(1983), *S.C.,* 392 Mass. 676 (1984).[9] In *Commonwealth* v. *Cong
Duc Le,* 444 Mass. at 441, the Supreme Judicial Court overruled
its previous holding in *Commonwealth* v. *Daye,* 393 Mass. 55, 61
(1984),[10] to the extent that it had required an identifying wit-
ness to acknowledge having made the extrajudicial identifica-

---

[8]Raedy made no motion in limine regarding, nor any trial objection to, Of-
ficer Emmott's testimony about Barry's identification statement at the scene.
Any error in the admission of this testimony would, therefore, warrant reversal
only if it were shown to have created a substantial risk of a miscarriage of
justice. See *Commonwealth* v. *Whelton,* 428 Mass. 24, 26-27 (1998) (improper
admission of victim's pretrial statement inculpating defendant did not create
substantial risk where victim took stand and was subject to cross-examination
about statement).

[9]Both the declarant, Barry, and the victim, Griffin, testified at trial.

[10]Here, as in *Commonwealth* v. *Daye,* 393 Mass. at 57-58, at trial the
declarant either could not remember or denied making any prior statements
identifying the defendant as the perpetrator. At several points, Barry's state-
ment of inability to identify the defendant as the bottle wielder "was as
consistent with lack of memory as with lack of perception." *Commonwealth* v.
*Cappellano,* 392 Mass. at 679.

tion in order for it to be admitted substantively (rather than only for impeachment) at trial.

Under *Commonwealth* v. *Cong Duc Le*, 444 Mass. at 440, it is immaterial that the identifying witness disavows having made a prior extrajudicial identification, or even denies having any basis for making an identification. See *Commonwealth* v. *Clements*, 436 Mass. at 191-195 (court attributed no evidentiary significance to witness's insistence that he had never known identity of shooter due to intoxication and poor lighting at scene, and had only identified defendant's photograph based on what he had heard from others and pressure from victim's family). "If the jury are convinced that a prior identification was made, their use of that identification should not be artificially limited merely because a witness the jury do not believe has denied making that identification." *Commonwealth* v. *Cong Duc Le*, *supra* at 441.[11] The "mere fact" that Barry's testimony conflicted with Officer Emmott's account of Barry's express extrajudicial identification of Raedy "does not make it unhelpful to the jury in evaluating the over-all evidence as to whether the defendant on trial was the one who committed the charged offense." *Id.* at 440. It is up to the jury whose version to believe. *Id.* at 439-440.

Raedy contends that Barry's extrajudicial statement was inadmissible even under *Commonwealth* v. *Cong Duc Le*, *supra*, because Officer Emmott testified only to having heard Barry name Raedy as the assailant (which Raedy speculates might have been the product of Barry's "surmise"), rather than hearing Barry state that she had directly observed Raedy commit the assault. The *Cong Duc Le* decision, however, made no such distinction. Rather, it dealt generally with disputes between a declarant who disavows making a prior identification and a witness "who testifies that the [declarant] made a particular prior identification." *Id.* at 440. In the circumstances, the judge and the jury could permissibly infer that Barry's extrajudicial statement (as testified to by Emmott) was based upon her own per-

---

[11]As long as Raedy's confrontation and due process rights were satisfied by Barry taking the stand and being subject to cross-examination, the extrajudicial identification was admissible substantively. *Commonwealth* v. *Blaney*, 387 Mass. 628, 631 (1982).

ception. See *Commonwealth* v. *Galicia*, 447 Mass. 737, 748 (2006). Moreover, extrajudicial identifications have been held admissible as probative evidence even when they were made by the declarant in the form of a conclusory statement or accusation. See, e.g., *Commonwealth* v. *Cappellano*, 17 Mass. App. Ct. at 275 n.4, 276 ("Jimmy Cappellano shot me," said by victim to police officer, admissible as statement of identification).

Raedy attempts to distinguish *Commonwealth* v. *Cong Duc Le*, *supra*, from the present case, asserting that there, a police officer observed the declarant "pick out" the defendant's photograph from an array that the officer had shown him, whereas here, the officer did not personally observe the act of Barry's identification as it occurred. This purported distinction arises from the provision in Fed.R.Evid. 801(d)(1)(C) and its unofficial State cognate, Proposed Mass.R.Evid. 801(d)(1)(C), that an extrajudicial "statement" is not hearsay (assuming the declarant is available for cross-examination) if it is "one of identification of a person made after perceiving him"[12] — a provision that (he stresses) was quoted and discussed in *Commonwealth* v. *Cong Duc Le*, 444 Mass. at 437-439. Raedy argues that such language renders third-party testimony as to an extrajudicial identification by a declarant inadmissible for probative (as opposed to impeachment) purposes unless the third party was a percipient observer of the entire identification process, including observing the declarant in the very act of perceiving and identifying the particular person (or an image of that person). In effect, Raedy's position is that such testimony is substantively admissible only when the extrajudicial identification was the product of contemporaneously observed photographic array, lineup, or one-on-one showup procedures.[13]

The court in the *Cong Duc Le* case did not, however, so limit

---

[12]Proposed Mass.R.Evid. 801(d)(1)(C) omits the word "made."

[13]Raedy notes that *Commonwealth* v. *Cong Duc Le*, 441 Mass. at 433-435, involved a police officer's testimony that he had shown the declarant a photographic array containing the defendants' photographs, and that the declarant had "picked out" the defendants' photographs from the array and identified the defendants as the assailants (an identification that the declarant denied at trial).

its ruling,[14] but rather relied on the fundamental premise that "[p]rior identification evidence is of substantive value, even in the absence of any in-court identification, because it has occurred under nonsuggestive circumstances and closer in time to the offense," when there is less chance that the identification has been influenced by fading memories or any sort of outside pressure on the witness. *Id.* at 441. See *Commonwealth* v. *Weichell*, 390 Mass. 62, 71 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Warren*, 403 Mass. 137, 140-141 (1988); *Commonwealth* v. *Martinez*, 431 Mass. 168, 176 n.6 (2000).

That rationale — closer in time equals superior probative worth — applies at least as much when the identification is contained in an apparently impromptu and unprompted statement to the police moments after the crime, as here, as it does to later identifications made after the police have had time to set up a photographic array or lineup.[15] Its application is peculiarly

---

[14]Even the plain meaning of Proposed Mass.R.Evid. 801(d)(1)(C) relied on by Raedy does not support his reading that the testifying witness has to observe the declarant in the very act of identifying the defendant. The rule's requirement that, to be nonhearsay, the statement be "one of identification of a person [made] after perceiving him" focuses on the nature of the statement as an act of communication by the declarant to the witness identifying the person after the *declarant* has perceived that person, not as an act of the declarant perceived by the witness as it occurs. As noted earlier, both the judge and jury here could readily and reasonably infer that Barry's unequivocal statement to Officer Emmott soon after the crime was committed, identifying Raedy as the bottle assailant, was the product of her own perception. Whether that identification had some other basis beyond Barry's perception was a matter for the jury to decide. See *Commonwealth* v. *Cong Duc Le*, 444 Mass. at 439-440.

[15]The court in the *Cong Duc Le* case suggests that the former type of extrajudicial identification may be more trustworthy than the latter types, since it " 'takes place before the defendant or some other party has had the opportunity, through bribe or threat, to influence the witness to change his mind' . . . . [A] witness's testimony about the identification procedure itself — what the witness was asked to do, what selection (if any) the witness made, and what the witness said about that selection — is also susceptible to improper influences." *Commonwealth* v. *Cong Duc Le*, 444 Mass. at 441 (citation omitted). Such an on-the-scene identification is arguably more reliable than police-observed photographic array, lineup, and showup identifications, all of which raise greater due process concerns, or at least the greater likelihood of due process challenges, on the ground of unnecessarily suggestive police conduct. See, e.g., *Commonwealth* v. *Simmonds*, 386 Mass. 234,

apposite in the instant situation, where the declarant was very familiar with the defendant because of their past romantic relationship, enhancing the reliability of her identification. Requiring the police to observe such a declarant undertaking an essentially pointless exercise of examining a photographic array[16] to pick out a picture of someone the declarant knows well in order to qualify subsequent police testimony regarding the declarant's identification — which the defendant's argument essentially would mandate — would add little, if anything, to the reliability of the identification, exalt form over substance, and "constitute a restraint on the police that neither the Federal nor State Constitution requires." *Commonwealth* v. *Martin*, 447 Mass. 274, 283 (2006).

More to the point, no Massachusetts case has ever held that such a restriction is a precondition to the substantive admission of an extrajudicial identification. To the contrary, such identifications have frequently been admitted substantively when, as here, they were made as a part of a witness's general statement to the police shortly after the crime. See *Commonwealth* v. *Martinez*, 431 Mass. at 175; *Commonwealth* v. *Greene*, 9 Mass. App. Ct. 688, 689, 692 (1980); *Commonwealth* v. *Maioli*, 11 Mass. App. Ct. 179, 183-184 (1981); *Commonwealth* v. *Cappellano*, 17 Mass. App. Ct. at 275-277; *Commonwealth* v. *Peterson*, 67 Mass. App. Ct. 49, 53-54 (2006).[17]

*Conclusion.* The Commonwealth's evidence was sufficient to

---

235-240 (1982) (lineup); *Commonwealth* v. *Thornley*, 400 Mass. 355, 362-364 (1987) (photographic array); *Commonwealth* v. *Martin*, 447 Mass. 274, 278-284 (2006) (showup). Indeed, the circumstances of the extrajudicial identification here involved a lesser degree of suggestiveness than that which inheres in any in-court identification. Cf. *Commonwealth* v. *Napolitano*, 378 Mass. 599, 604 (1979).

[16]In this case, a showup or lineup was not feasible because of the defendant's flight and evasion of the police.

[17]Statements admissible as pretrial identifications extend beyond specific identifications of particular individuals and include descriptions of an unarmed perpetrator's physical characteristics or clothing. See, e.g., *Commonwealth* v. *Martinez*, 431 Mass. at 175; *Commonwealth* v. *Weichell*, 390 Mass. at 72 (physical description and resulting composite drawing); *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 690 (1991) (clothing). Although there are a few decisions from other jurisdictions which appear to support Raedy's interpretation of rule 801, the Commonwealth has convincingly demonstrated that there are far more substantial and persuasive cases outside our jurisdiction

allow the jury to find beyond a reasonable doubt that the defendant was the perpetrator of the crime charged, without requiring jury speculation or conjecture; and Officer Emmott's testimony as to Barry's extrajudicial identification of the defendant as the wrongdoer was admissible as substantive evidence and did not create a risk of a miscarriage of justice.

*Judgment affirmed.*

---

for admitting identifications made during police questioning shortly after the crime. See particularly *United States* v. *Owens*, 484 U.S. 554, 564 (1988) (identifications during interview and then through photographic array both held substantively admissible without distinction); Weinstein's Evidence Manual § 15.01[4], at 15-10 (2006) ("Rule 801 [d][1][C] applies regardless of when the prior identification was made — whether at the scene of the crime, at a later chance encounter, or at a police line-up").