## Commonwealth *vs.* Jovon Adams.[1]

Suffolk. November 5, 2010. - January 28, 2011.

Present: Ireland, Spina, Botsford, & Gants, JJ.

*Homicide. Armed Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Assault by Means of a Dangerous Weapon. Firearms. Evidence,* Identification, Testimony of third party respecting identification, Self-defense. *Identification. Self-Defense. Practice, Criminal,* Capital case, Instructions to jury.

At a murder trial, two pretrial statements from one witness, identifying the defendant as one of the two shooters involved in the incident, did not constitute inadmissible hearsay in violation of Proposed Mass. R. Evid. 801 (d) (1) (C) (a rule that has been adopted by this court), where the witness (who was the defendant's brother) knew the defendant well, and differences between the witness's pretrial identification and his trial testimony were matters to be resolved by the jury; further, there was no abuse of discretion as to the extent of the statement that was admitted, and this court declined to treat multiple versions of an extrajudicial identification as it treats statements of first complaints in sexual abuse cases. [770-773]

Although the judge at a murder trial erred in instructing the jury that only the second and third pretrial statements from one witness, identifying the defendant as one of the two shooters involved in the incident, could be considered for substantive purposes (and thus, by implication, instructing that the witness's first pretrial identification could not be so considered), no substantial likelihood of a miscarriage of justice arose, where the full evidentiary use of the witness's first statement would have been cumulative of his trial testimony. [773-774]

At the trial of indictments charging the defendant with, inter alia, assault by means of a dangerous weapon, the judge did not err in denying the defendant's request to instruct the jury on defense of another, where there was no objective basis on which either the defendant or his sister reasonably could have believed that she was in danger in a fight in which she intervened by her own volition and was not herself beaten, but rather was pulled away so that the participants could proceed in even combat. [774-775]

Indictments found and returned in the Superior Court Department on September 27, 2007.

The cases were tried before *Frank M. Gaziano,* J.

[1]These indictments were returned in the name Jovan Adams. On October 29, 2008, the Commonwealth moved to amend the indictments to read "Jovon Adams." See G. L. c. 277, § 19.

*John H. Cunha Jr. (Charles Allan Hope* with him) for the defendant.

*Elisabeth Kosterlitz,* Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted of deliberately premeditated murder, armed assault with intent to murder, assault and battery by means of a dangerous weapon, assault by means of a dangerous weapon, and carrying a firearm without a license, subsequent offense (two indictments). The charges involve two incidents that occurred on two consecutive days against three victims. On appeal the defendant asserts error in the admission substantively of two pretrial statements by his younger brother, Josiah, who stated that the defendant, armed with a gun, was at the scene of the shooting in which one victim was murdered and a second was wounded. The statements were admitted after Josiah testified at trial that the defendant was not present at the shooting. The defendant also claims error in the judge's refusal to give his requested instruction on defense of another as to the indictment charging assault by means of a dangerous weapon on the previous day. We affirm the convictions and decline to reduce the degree of guilt on the murder conviction or order a new trial pursuant to G. L. c. 278, § 33E.

1. *Facts.* The jury could have found the following facts. On the afternoon of May 14, 2007, two groups totaling about fifty people had gathered at the Franklin Field housing development in the Dorchester section of Boston. An argument broke out between the groups. The argument escalated into a fight between two women. Christina Mills, the defendant's sister, intervened in the fight, but was restrained by Takeyda Allen. The defendant thereupon became involved. He pointed a gun at Allen and directed her to leave his sister alone.[2] Shortly thereafter, the fight broke up and the crowd dispersed.

That evening, in a telephone conversation, Allen's brother challenged the defendant to a fight.

The next day, May 15, the groups met again in the same area to resume fighting. Several scuffles and arguments broke out. The defendant's sister was there. At one point she telephoned

---

[2]The defendant was indicted for assault by means of a dangerous weapon and carrying a firearm without a license, subsequent offense, for this incident.

someone, and was heard saying, "They're up here." At approximately the same time, the defendant, who was nearby at his mother's apartment, was heard saying during a heated telephone conversation, "I don't give a [expletive]. I'll do it in broad daylight." Shortly thereafter, the defendant and Taquise Johnson (his codefendant, who was tried separately) left the apartment.

About ten minutes after the defendant and Johnson left the apartment, Cordelro Andrade, who had been involved in one of the fights, left the area with Takeyda Allen's brother. As they were walking, two men, both of whom had guns, emerged from an automobile and started shooting. One wore a white "hoodie" sweatshirt and jeans. He was African-American, slender, and about five feet, seven inches, or five feet, eight inches, tall. The other was lighter skinned, and wore a dark "hoodie" and dark jeans.

One projectile went through Andrade's right forearm. A second projectile entered his left lower back and perforated the aorta, stomach, left kidney, and right lung, causing massive blood loss and death. A bystander, who had been walking with her son and her niece, was shot in the left leg.

Soon after the shooting the defendant and Johnson returned to the apartment of the defendant's mother. The defendant had removed his shirt and was breathing heavily. He ran into the bathroom and vomited. Johnson ran into the rear bedroom, where he was joined by the defendant. The defendant was heard saying, "When I hit him, he made a painful sound." The defendant put on a shirt, then he and Johnson left the apartment.

In the early evening of May 15 the defendant told his brother Robert that he left the guns at their mother's apartment. They agreed that Robert would move them. The defendant did not want to return to his mother's apartment, so Johnson went with Robert to show him where they hid the guns. Robert made arrangements to put the guns in a locked storage area in the basement. Police arrived as Robert was in the process of moving the guns, and he was arrested. Police recovered three guns: a .357 Smith and Wesson revolver, a .357 Ruger revolver, and a .380 caliber Cobra semiautomatic pistol.

A projectile recovered from Andrade's body was determined to have been fired from the .357 Smith and Wesson revolver.

The projectile recovered from the bystander was determined to have been fired from the .380 caliber pistol, as were two shell casings recovered from the scene of the shooting.

The defendant told an inmate at the jail where he was awaiting trial that he had a murder case pending, and that he had involved his brother in the case because he needed to dispose of the guns. He said the police caught his brother with the guns. The defendant boasted that no one could identify him.

At the trial in October, 2008, the defendant's twelve year old brother, Josiah, identified Johnson as one of two men whom he saw get out of a car as Josiah was hailing Andrade. He testified that Johnson approached Andrade with a gun and shot at him several times. Josiah was unable at trial to identify the second man, but he said it was not one of his brothers, including the defendant. At the conclusion of Josiah's direct examination the prosecutor asked if he was being truthful when he denied seeing the defendant at the scene. Josiah answered that he was. The prosecutor then asked Josiah if he was also being truthful when he spoke to police during his interviews on May 23, 2007, and June 15, 2007. Josiah said he was not being truthful during those interviews because he was afraid.

Josiah had been interviewed by police on three occasions before trial. During the first interview, May 18, 2007, the day after the shooting, he told police that Johnson was the only shooter, and he wielded two guns.

In the second interview, on May 23, 2007, Josiah told police he saw both the defendant and Johnson shooting at Andrade. Excerpts of the audio recording of that interview were played to the jury and, over the defendant's objection, the judge instructed the jury they could consider that statement as substantive evidence.

In the third interview, which occurred on June 15, 2007, Josiah told police that both Johnson and the defendant were shooting at his friend, Andrade. A video recording of that interview was played for the jury, and the judge instructed the jury, over objection, that they could consider that statement as substantive evidence.[3]

---

[3]There were differences between the second and third versions, including a reversal of the clothing worn by the defendant and Johnson.

2. *Pretrial statements of "identification."* The defendant argues that Josiah's pretrial statements identifying him as one of the shooters was inadmissible hearsay that does not fall within Proposed Mass. R. Evid. 801 (d) (1) (C), the rule we adopted in *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 435-442 (2005).[4] The defendant contends that rule 801 (d) (1) (C) applies only to identifications made from a photographic array, a showup, or other identification procedure, including a lineup, and does not include simply the articulation of a name based on the witness's familiarity with the person identified.

In *Commonwealth* v. *Raedy*, 68 Mass. App. Ct. 440, 446-450 (2007), the Appeals Court considered precisely this question and concluded that rule 801 (d) (1) (C) contains no such limitation. *Id.* at 448-449. The court held that extrajudicial statements of identification that are not part of an identification procedure are admissible for substantive purposes, even in the absence of any in-court identification, where they have been made in "non-suggestive" circumstances[5] and closer in time to the offense, "when there is less chance that the identification has been influenced by fading memories or any sort of outside pressure on the witness." *Id.* at 449. The Appeals Court reasoned that requiring the police to observe a declarant go through the motions of pointing to a picture of someone he knows well in order to qualify subsequent police testimony as to the declarant's pretrial identification, which the defendant's argument would mandate, would add nothing to the reliability of that identification, elevate form over substance, and restrain the police in a way that is not constitutionally required. *Id.* at 450. We agree with the analysis of the Appeals Court.

Traditional identification procedures such as photographic arrays, showups, and lineups were designed primarily for witnesses

---

[4]Rule 801 (d) (1) (C) of the Proposed Mass. R. Evid. (1980) states: "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person after perceiving him . . . ." See Mass. G. Evid. § 801, at 249-250 (2010).

[5]There is no evidence to support the defendant's assertion that Josiah's pretrial statements should not have been admitted because they were the product of police pressure. Josiah testified that he lied to police because he was afraid, but when asked why he was afraid, he said he did not know why he had felt that way.

who had never before seen a particular individual, or who may have seen the individual previously but on a limited basis. They are not normally used, and are not required, for witnesses who know an individual well. It is illogical to allow for substantive purposes a pretrial identification that consists of a witness's selection of a photograph of someone he does not know, or the witness's selection of someone he does not know from a lineup, but to exclude a more reliable pretrial *statement* of identification by a witness who knows the individual well. Here, it is undisputed that Josiah knew the defendant well. As with questions surrounding differences between identifications made at pretrial identification procedures and a witness's testimony at trial, differences between a witness's pretrial identification statement and his trial testimony should be resolved by the jury. *Commonwealth* v. *Cong Duc Le, supra* at 441. Moreover, considerations of witness pressure or intimidation, noted by the Appeals Court in the *Raedy* case and cited by us as a basis for adopting rule 801 (d) (1) (C), see *Commonwealth* v. *Cong Duc Le, supra,* have greater potential to affect trial testimony where the witness and the defendant know one another well. That is especially true here, where Josiah and the defendant are brothers. The jury had the opportunity to observe Josiah when he testified and could consider all these circumstances when deciding which, if any, statement they would accept, or how much of any statement they would accept.

The defendant relies on several cases for the proposition that we should construe rule 801 (d) (1) (C) as limiting extrajudicial identifications to those made from photographic arrays, showups, or lineups. See *United States* v. *Kaquatosh,* 242 F. Supp. 2d 562, 565-567 (E.D. Wis. 2003); *State* v. *Robinson,* 718 N.W.2d 400, 408 (Minn. 2006); *State* v. *Shaw,* 705 N.W.2d 620, 628-629 (S.D. 2005). The reasoning in those cases, not relevant here, is based generally on the legislative history of the evidentiary rule in question. Unlike those jurisdictions, our rule has its origins in our common law of evidence, and no comparable restriction was imposed at the time the rule was adopted. See *Commonwealth* v. *Cong Duc Le, supra* at 432; *Commonwealth* v. *Weichell,* 390 Mass. 62, 71-72 (1983), cert. denied, 465 Mass. 1032 (1984). In addition, a majority of jurisdictions that have considered this issue have ruled as we do. See *United States* v.

*Lopez,* 271 F.3d 472, 484 (3d Cir. 2001), cert. denied, 535 U.S. 908 (2002); *People* v. *Cuevas,* 12 Cal. 4th 252, 271-272 (1995); *People* v. *Johnson,* 701 P.2d 620, 622 (Colo. Ct. App. 1985); *State* v. *Ildefonso,* 72 Haw. 573, 580-581 (1992); *State* v. *Woodbury,* 127 Idaho 757, 760 (Ct. App. 1995); *Treadway* v. *State,* 924 N.E.2d 621, 628-629 (Ind. 2010); *State* v. *Stokes,* 829 So. 2d 1009, 1010 (La. 2002); *People* v. *Sykes,* 229 Mich. App. 254, 266-269 (1998); *Smith* v. *State,* 25 So. 3d 264, 272-274 (Miss. 2009); *State* v. *Stoppleworth,* 667 N.W.2d 586, 588-589 (N.D. 2003); *State* v. *Whittle,* 989 P.2d 52, 61 (Utah 1999); *State* v. *Grover,* 55 Wash. App. 252, 256-257 (1989).

The defendant next argues that Josiah's pretrial statements should not have been admitted under rule 801 (d) (1) (C) because they were not statements of identification, but rather were accusations. He again relies on *United States* v. *Kaquatosh, supra*; *State* v. *Robinson, supra*; and *State* v. *Shaw, supra.* We do not find these cases persuasive. Absent context, an act or statement of identification is meaningless. Identification evidence has meaning only when accompanied by statements such as "he hit me," or "he did not hit me," or "he was there," or "he was not there." In that sense, identification evidence must be accompanied either by some form of accusation relevant to the issue before the court, or some form of exclusionary statement, in order to be relevant to the case.

The extent of the statement needed to provide context will vary from case to case, depending on what the witness remembers or denies at trial. We emphasize that the rule was not intended to render a witness's entire statement admissible, but only so much as comprises relevant evidence on the issue of identification. Judges have broad discretion in this area, and parties who intend to offer pretrial statements of identification are well advised to bring the matter to the attention of the trial judge at the earliest practicable time, preferably in a motion in limine. The party should include precisely those portions of the extrajudicial statement of identification sought to be admitted. We are satisfied that in this case there was no abuse of discretion as to the extent of the statement that was admitted. Where Josiah testified that he had lied when he gave his second and third statements, a complete presentation of his pretrial statements was warranted to enable

the jury to assess what, if anything, they would accept in his statements of identification.

The defendant urges us to treat multiple versions of an extra-judicial identification as we treat statements of first complaint in sexual abuse cases. See *Commonwealth v. King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006). The Commonwealth thus would be limited to Josiah's first extrajudicial statement. We decline to adopt such a rule because considerations underlying the first complaint doctrine are very different from those behind extrajudicial identifications, which were the subject of the rule we announced in *Commonwealth v. Cong Duc Le, supra* at 439-442. The former involve concerns about "piling on" hearsay descriptions of a sexual assault crime that are offered only to corroborate the victim's trial testimony. The latter are not hearsay, and are admissible for substantive purposes relating to the question of identification.

Finally, the defendant argues that, where Josiah expressly rejected his prior statements as lies, they should not have been made available to the jury as substantive evidence under the rule in *Sullivan v. Boston Elevated Ry.*, 224 Mass. 405, 406 (1916). In that case, the court held that, where a witness is asked to make a choice between contradictory statements made by the witness *at trial*, the witness is bound by the choice and the jury are not entitled to believe the repudiated version. That rule has no application here, where Josiah chose his trial testimony over earlier, pretrial versions of his identification. If the rule were otherwise, a witness could simply avoid his testimony given at a pretrial deposition, which he considers unfavorable, by testifying differently at trial and repudiating his deposition testimony as erroneous.

We conclude that there was no error in the admission of Josiah's second and third pretrial statements of identification for substantive purposes.

Finally, the defendant argues that, if we reject his arguments on this point, we should find error in the judge's instruction that only Josiah's second and third statements could be considered for substantive purposes and that, by implication, Josiah's first extrajudicial statement of identification could not be considered for substantive purposes. We agree that Josiah's first statement

should have been treated in the same manner as his second and third statements. There was no objection, so we must inquire whether the error resulted in a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992).

The most important aspect of Josiah's first statement was that Johnson was the only shooter. In this respect, its full evidentiary use only would have been cumulative of his trial testimony. Therefore, no substantial likelihood of a miscarriage of justice could have resulted from its limited use. See *Commonwealth* v. *Colon*, 449 Mass. 207, 219 (2007).

3. *Defense of another.* The defendant argues that the judge erred by refusing to instruct the jury on the question of defense of another concerning the indictment charging assault by means of a dangerous weapon, relating to the incident of May 14, 2007, in which the defendant allegedly came to the defense of his sister.

"An actor is justified in using force against another to protect a third person when (a) a reasonable person in the actor's position would believe his intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself." *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976). A defendant is entitled to such an instruction if the evidence, viewed in its light most favorable to him, is sufficient to raise a reasonable doubt as to both these elements. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). Defense of another tracks, and is interwoven with, the elements of self-defense. See *Commonwealth* v. *Martin, supra* at 650; *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 126 (1995). The elements of self-defense, where nondeadly force is used,[6] are (1) a reasonable concern for one's personal safety, *Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995); (2) the use of all reasonable means to avoid physical combat; and (3) the degree of force used must be reasonable in the circumstances, with proportionality

---

[6]Because of the result we reach, we need not address whether pointing the gun at Takeyda Allen constituted "the use of deadly force." Compare and contrast *Commonwealth* v. *Cataldo*, 423 Mass. 318, 322-323 (1996).

being the touchstone for assessing reasonableness. *Commonwealth* v. *Harrington*, *supra*. See *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 368-369 (2004).

Applying these principles, we conclude that the judge was correct to deny the defendant's request for the instruction of defense of another. The evidence indicated that the defendant's sister intervened in a fight by her own volition. The evidence further indicated that she herself was not beaten, but merely pulled out of the fight so the participants could proceed in even combat. Thus, there was no objective basis on which either the defendant or his sister reasonably could believe she was in danger. She could not have raised defense of herself, and he could not raise defense of his sister. Moreover, she had not sought all reasonable means to avoid physical combat, but instead chose to become fully engaged. There was no error.

4. *G. L. c. 278, § 33E.* We have reviewed the briefs, the entire record, and all the issues, and see no reason to reduce the murder conviction to a lesser degree of guilt or order a new trial.

*Judgments affirmed.*